UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
REGINALD LAWRENCE, *pro se*,

                        Petitioner,

                        -against-

GARY GREENE, SUPERINTENDENT,

                        Respondent.
-------------------------------------------------------------- x

**MEMORANDUM AND ORDER**

06-CV-0202 (DLI)

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se*[1] Petitioner Reginald Lawrence is currently serving a prison sentence of twenty-five years following his conviction in New York State Supreme Court, Kings County, of robbery in the first degree (N.Y. Penal Law § 160.15[2]) and attempted escape in the first degree (N.Y. Penal Law § 205.10[2]). Petitioner filed the instant action seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner challenges his sentence on the following grounds: (i) Petitioner was denied effective assistance of counsel; (ii) the trial court abused its discretion when it denied Petitioner the opportunity to present psychiatric evidence; (iii) the trial court was biased against Petitioner in various rulings during the proceedings; and (iv) Petitioner was denied the right to an impartial jury. For the reasons set forth below, the petition is denied.

**I.    Background**

At trial, the prosecution established that Petitioner, acting in concert with Calvin Morgan in the commission of a robbery, shot and killed a cab driver on January 28, 1997 and, armed with

---

[1] The court is mindful that *pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

1

a gun, forcibly stole a Shearling coat and jewelry from Brian Phillips on February 2, 1997. (*See* Respondent's Memorandum of Law, Docket Entry No. 10 ("Resp. Brief") at 2.) For these acts, Petitioner was convicted by a jury on February 25, 1998 of robbery in the first degree (N.Y. Penal Law § 160.15[2]) and attempted escape in the first degree (N.Y. Penal Law § 205.10[2]), and was sentenced to twenty-five years in prison for the robbery, concurrent with two to four years of imprisonment for the attempted escape. (*See* Appellant's Brief in Support of Equitable Tolling, Docket Entry No. 1 ("Pet. Brief") at 1; Resp. Brief at 2.)

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, ("Appellate Division"), Second Department, claiming that: (i) two sworn jurors were improperly discharged; (ii) Petitioner was denied a fair trial; (iii) Petitioner's guilt was not proven beyond a reasonable doubt; and (iv) Petitioner's sentence was excessive. (*See* Pet. Brief at 1.) On March 17, 2003, Petitioner's sentence was affirmed. *See People v. Lawrence*, 303 A.D.2d 603 (2d Dep't 2003). On May 29, 2003, leave to appeal to the New York State Court of Appeals was denied. *See People v. Lawrence*, 100 N.Y.2d 540 (2003).

In June 2003, Petitioner retained counsel in connection with his prospective N.Y. C.P.L. § 440 motion and federal habeas appeal, (*see* Pet. Brief, Ex. A-C), but soon thereafter filed a complaint against counsel with the Queens Bar Association on the basis that counsel disregarded Petitioner's letters, (*see* Pet. Brief, Ex. G). In a letter dated October 9, 2003, counsel apologized for not responding sooner to Petitioner's correspondence and told Petitioner to "[b]e assured that [counsel] will be working diligently on [Petitioner's] behalf to pursue any and all remedies [that] may be available to [Petitioner] either in state court or federal court." (*See* Pet. Brief, Ex. H.) Petitioner claims that he then consistently corresponded with counsel regarding obtaining

missing transcripts, appellate briefs and suppression minutes relevant to Petitioner's case. (*See* Pet. Brief at 2-3.)

In a letter dated July 26, 2004, Robert C. Heinemann, Clerk of the Court of the Eastern District of New York, responded to Petitioner's July 19, 2004 request for an extension of time to file his habeas petition, and enclosed the 28 U.S.C. § 2254 petition form and form to request waiver of the filing fee. (*See* Pet. Brief, Ex. M.) In November 2004, Petitioner reopened his claims against counsel with the Queens County Bar Association for "his negligence and unfulfilled promises." (*See* Pet. Brief, Exs. N, O.)

On January 15, 2005, Petitioner filed a Section 440.10 motion *pro se* in New York Supreme Court, Kings County, claiming that his trial counsel was ineffective because counsel failed to: (i) present an alibi defense, (ii) serve notice of a psychiatric defense and (iii) interview Petitioner's co-defendant. (*See* Resp. Brief at 3.) In support of these claims, Petitioner submitted affidavits from Petitioner's sister and girlfriend, which stated Petitioner was at a party during the time of the robbery, and from co-defendant Calvin Morgan, which stated Petitioner did not participate in the robbery. (*See* Pet. Brief at 4; Resp. Brief at 3.) On August 24, 2005, Petitioner's Section 440.10 motion was denied. (*See* Petitioner's Habeas Petition, Docket Entry No. 1 ("Petition") at 10.) On December 1, 2005, Petitioner's motion for leave to appeal was denied. (*See* Petition at 12.)

On January 10, 2006, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2254. On January 30, 2006, the court issued an order to show cause requesting that Respondent file an answer to the petition, addressing the timeliness of the petition under 28 U.S.C. § 2244(d). On February 8, 2006, Respondent filed a response and requested that the petition be dismissed as time barred. (*See* Docket Entry Nos. 2, 5.) This Court denied

Respondent's motion to dismiss the petition with leave to renew after the answer is filed. (*See* Docket Entry Nos. 6, 7.) On May 31, 2006, Respondent filed another response to the court's January 30, 2006 order to show cause, and requested that the petition be dismissed as time-barred as well as on the merits of the petition. (*See* Docket Entry No. 10.)

## II.    Discussion

### *A. AEDPA Statute of Limitations*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to a state court judgment has one year to file an application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). AEDPA provides that the one-year limitation period runs from the date on which the latest of the following four events occurs: (A) the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) a new constitutional right was announced by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the factual predicate of the claim or claims presented could have been discovered by the Petitioner through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). A conviction becomes final for purposes of AEDPA when the United States Supreme Court denies a writ of certiorari, or, if the Petitioner does not seek a writ, the date the 90-day period to seek this writ expires. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

In the instant action, the only applicable subsection of the AEDPA statute of limitations is subsection (A).[2] Here, Petitioner's conviction was affirmed by the Appellate Division, Second Department on March 17, 2003. *See People v. Lawrence*, 303 A.D.2d 603 (2d Dep't 2003). Leave to appeal the affirmance of Petitioner's conviction was denied by the New York State Court of Appeals on May 29, 2003. *See People v. Lawrence*, 100 N.Y.2d 540 (2003). Petitioner did not seek certiorari from the United States Supreme Court; thus, Petitioner's judgment of conviction became final on August 27, 2003, 90 days after the New York State Court of Appeals denied Petitioner leave to appeal. The one-year statute of limitations under Section 2244(d) began on August 27, 2003, so a timely habeas petition must have been submitted on or before August 27, 2004. As Petitioner filed this action on January 10, 2006, well after August 27, 2004, the petition is time-barred unless the limitations period is tolled. *See* 28 U.S.C. § 2244(d)(1).

*B. Statutory Tolling*

Although Petitioner does not explicitly raise a statutory tolling argument, the court addresses a possible claim of statutory tolling in light of Petitioner's *pro se* status. *See supra* note 1. Section 2244(d)(2) tolls the one-year limitations period while "properly filed" applications for state post-conviction or other collateral review with respect to the judgment of conviction are pending. However, Section 2244(d)(2) applies only if Petitioner's post-conviction motion was pending within the one-year limitations period. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*). Here, although Petitioner filed a Section 440.10 motion, it was not filed until after the one-year limitations period under AEDPA had already expired and, thus, was not "pending" at any time during that one-year period. Accordingly, the motion does not toll the one-year limitations period.

---

[2] There is no evidence, nor does petitioner claim, that any of the other subsections of 28 U.S.C. § 2244(d)(1) apply.

*C. Equitable Tolling*

The AEDPA statute of limitations is not jurisdictional so the court may equitably toll the period. *Holland v. Florida*, 130 S. Ct. 2549, 2560-62 (2010). "A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). A petitioner seeking equitable tolling must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

      i.    Extraordinary Circumstances

Petitioner argues that the court should equitably toll his petition because of appellate counsel's "intentional malfeasance" in failing to timely pursue his Section 440.10 motion and federal habeas claim. (*See* Pet. Brief at 4.) However, the conduct of appellate counsel here does not constitute extraordinary circumstances warranting equitable tolling.

In the Second Circuit, "attorney error *normally* [does] not constitute the extraordinary circumstances required to toll the AEDPA limitations period," but "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (emphasis in original); *see also Holland*, 130 S. Ct. at 2564 (citing with approval the approach adopted by the Second Circuit in *Baldayaque*, 338 F.3d at 152-53). Garden variety attorney misconduct, such as misunderstanding the applicable limitations period to bring a claim under AEDPA, generally will not amount to extraordinary

circumstances warranting equitable tolling. *See Holland*, 130 S. Ct. at 2564; *Baldayaque v. United States*, 338 F.3d at 151-52; *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001).

The facts in the instant case differ drastically from the extreme circumstances that existed in cases where courts have found the attorney conduct constituted extraordinary circumstances. Here, appellate counsel: (i) was clearly responsive to Petitioner's letters, although delayed at times; (ii) had begun to take action on Petitioner's case as evidenced by counsel's letter regarding obtaining an affidavit from Petitioner's sister; and (iii) did not affirmatively represent that the habeas petition was time-barred when it clearly was not. *Cf. Holland*, 130 S. Ct. at 2564-65 (extraordinary circumstances likely existed warranting equitable tolling where counsel failed to respond to several letters in which petitioner repeatedly requested information about the status of his state case and insisted that counsel file his federal habeas petition on time); *Baldayaque*, 338 F.3d at 152-53 (extraordinary circumstances existed warranting equitable tolling where counsel failed to perform the essential services of communicating with the client and conducting basic legal research, and affirmatively represented to petitioner that it was too late to file his habeas petition even though nearly 14 months remained in the limitations period); *Valverde*, 224 F.3d at 133-34 (extraordinary circumstances existed warranting equitable tolling where corrections officer intentionally confiscated prisoner's habeas petition and related legal papers). Thus, although appellate counsel failed to file Petitioner's habeas petition after promising that he would "be working diligently on [Petitioner's] behalf to pursue any and all remedies that may be available to [Petitioner] either in state court or federal court," (*see* Petition, Ex. H.), counsel's delay in filing the habeas petition and failure to consider the statutory period for filing the petition constitute a "garden variety claim of attorney negligence," not "sufficiently

egregious" to warrant equitable tolling. *See Holland*, 130 S. Ct. at 2564-65; *Baldayaque*, 338 F.3d at 152-53; *Smaldone*, 273 F.3d at 138.

      ii.    Reasonable Diligence and Causal Relationship

Even if the court were to find that extraordinary circumstances exist here, the limitations period still cannot be tolled because Petitioner fails to demonstrate that he acted diligently or that there was causal connection between the extraordinary circumstances and the lateness of Petitioner's filing.

Petitioner was aware, approximately one year before the deadline to file his habeas petition, that counsel's assistance was insufficient. (*See* Petition, Exs. F, G.) Although Petitioner clearly understood that there was a deadline for him to file his habeas petition, as evidenced by Petitioner's request in July 2004 for an extension of time to file, (*see* Petition, Ex. M), Petitioner chose to remain with the same counsel and rely on him to file a timely habeas petition, (*see* Pet. Brief at 2). Even after Petitioner believed the deadline to file his federal habeas petition had expired, he still failed to file the petition for over a year. Furthermore, Petitioner's ability to file a grievance with the Queens County Bar Association, (*see* Petition, Ex. G), within the time period he seeks to toll, demonstrates Petitioner's ability to have timely filed his habeas corpus petition. *See Saunders v. Edwards*, 171 Fed. App'x. 872, 873 (2d Cir. 2006) (defendant's ability to have filed a timely habeas petition was evidenced by his commencement of several civil proceedings during the time period he sought to toll). Thus, even if the court were to find that counsel's conduct initially constituted extraordinary circumstances, Petitioner's failure to subsequently file the petition after realizing counsel's assistance was insufficient, especially where Petitioner here had almost a year to do so, shows Petitioner was not reasonably diligent and breaks any causal link between the alleged extraordinary

8

circumstances and the failure to file. *See McCowan v. Conway*, 2008 WL 123940, at *5 (E.D.N.Y. Jan. 10, 2008) (no causal connection between extraordinary circumstance and untimeliness "if [petitioner] . . . has remaining a sizeable window of opportunity to file a timely habeas corpus petition after the extraordinary circumstances cease, [but] fail[s] to act diligently within that window"); *Valverde*, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken."); *see also Celaj v. Artuz*, 49 Fed. App'x. 331, 333-34 (2d Cir. 2002) (with prior indication that a habeas petition had not been filed, reasonable diligence required petitioner to act even before learning of attorney's disbarment).

Petitioner also states that, in addition to the delay attributed to his counsel's malfeasance, Petitioner delayed filing his federal habeas corpus petition because "state prisoners are usually limited to filing one federal habeas corpus petition, [so] petitioner decided to wait for the outcome his C.P.L. § 440.10 motion." (*See* Pet. Brief at 4.) However, "Section 2244(d)(2) already accommodates the exhaustion requirements that prisoners face," thus, Petitioner's delay in filing his federal habeas petition pending the outcome of a state court remedy does not constitute extraordinary circumstances or reasonable diligence warranting equitable tolling. *See Smith*, 208 F.3d at 17-18. Petitioner's *pro se* status, ignorance or misunderstanding of law, or lack of legal expertise do not provide a basis for equitable tolling. *See id.* at 18; *Plasencia v. Barkley*, 2008 WL 4185879, at *4 (E.D.N.Y. Sept. 9, 2008); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002).

The court also rejects Petitioner's claim that equitable tolling is warranted, as Petitioner was unable to fill out the petition because he "didn't have his appellate briefs and didn't know

9

what issues were raised on his direct appeal." (*See* Pet. Brief at 3.) Courts have held that, in such circumstances, a reasonably diligent petitioner would have filed the petition with or without the documents, and informed the court of the attorney's actions that were preventing the filing of the petition. *See Morrison v. Ercole*, 2007 WL 2362206, at *7 (E.D.N.Y. Aug. 15, 2007). Moreover, Petitioner's instant habeas petition relies on claims previously raised on appeal and issues of ineffectiveness of counsel that were apparent to Petitioner at trial, thus, the delay was not reasonably attributable to the amount of preparation required to file the petition. *See McCowen*, 2008 WL 123940 at *6; *Morrison,* 2007 WL 2362206 at *7.

Therefore, even if the court found that extraordinary circumstances exist in this case, the AEDPA limitations period still would not be equitably tolled because Petitioner has not demonstrated his diligence in pursuing his claims or a causal relationship.

*D. Actual Innocence Claim*

Although Petitioner does not make a claim of actual innocence in his brief in support of his equitable tolling argument, (*see generally* Pet. Brief), in light of Petitioner's *pro se* status, the court will address Petitioner's innocence arguments that were raised in support of the merits of the Petition and regarded: (i) improper identification of Petitioner in a photo array, line-up and in-court identification, (*see* Petition, Attachment 2 at 117-22 ("Facts In Support of Petitioner's Innocence")), and (ii) submission of affidavits from Petitioner's friends and family, which provided Petitioner with an alibi (*see* Docket Entry No. 1, Attachment 2 at 37-83 ("Memorandum in Support of § 2254 Motion")). *See supra* note 1.

The Second Circuit expressly reserved "the question of whether a claim of actual innocence based on newly discovered evidence constitutes an extraordinary circumstance that merits equitable tolling." *Doe v. Menefee*, 391 F.3d 147, 160 (2d Cir. 2004). When reviewing

untimely petitions in which the petitioner has asserted a claim of actual innocence, the district court should determine "whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence." *Id.* at 161. In order to demonstrate actual innocence in a collateral proceeding, "a petitioner must support his claim 'with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). This court "must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Id.* (citing *Schlup*, 513 at 327-28). In order for a petitioner to "invoke the actual innocence gateway and obtain review of the merits of his claims," the court must determine that "in light of all the evidence, it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Doe*, 391 F.3d at 162 (quoting *Schlup*, 513 U.S. at 327)); *see also Foster v. Phillips*, 326 Fed. App'x. 597, 598 (2d Cir. May 6, 2009) ("An actual innocence claim does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." (internal quotation marks and citations omitted)).

The court rejects Petitioner's innocence claim that evidence from the photo array, line-up and in-court identification of Petitioner should have been insufficient to convict Petitioner, because all of this evidence was presented at trial and considered by the jury, thus, it is not "new

evidence" and does not warrant a finding of actual innocence.[3] *See Doe*, 391 F.3d at 161; (*see also* Facts in Support of Petitioner's Innocence.)

Although the alibi affidavits are "new evidence" because they were not presented to the jury at trial, the court cannot conclude that this evidence warrants a finding of actual innocence. Even if the alibi evidence had been introduced at trial, a reasonable juror would likely question whether the alibi affidavits obtained by Petitioner in fact came from trustworthy sources, as they were provided by Petitioner's sister, girlfriend and co-defendant as opposed to unbiased parties. The other evidence presented against Petitioner at trial might prompt a reasonable juror to conclude that Petitioner participated in the robbery despite the alibi provided by Petitioner's friends and relatives. Thus, even if the court were to find that Petitioner pursued any claims of actual innocence with reasonable diligence, the court cannot conclude that the alibi affidavits are trustworthy or that it is more likely than not that *no* reasonable juror would have found Petitioner guilty beyond a reasonable doubt based on the alibi affidavits. *See Schulp,* 513 U.S. at 324, 327; *Green v. Brown*, 2007 WL 4882657, at *6-*7 (S.D.N.Y. Oct. 29, 2007), *adopted in relevant part*, 2008 WL 313938 (S.D.N.Y. Feb. 5, 2008).

As Petitioner has failed to make a credible claim of actual innocence, the Court need not consider whether equitable tolling is available on this basis. *See Doe*, 391 F.3d at 160.

## III. Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus is dismissed as time-barred. The Petition is clearly untimely and, thus, the court need not address the merits of the Petition. The court also denies a certificate of appealability as Petitioner failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also*

---

[3] Any other potential argument of actual innocence made by Petitioner based on evidence already presented at trial would similarly be rejected.

FED. R. APP. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2011

/s/
DORA L. IRIZARRY
United States District Judge